**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 13-cv-00842-CMA

DORENE LEANNE BABB,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

---

**ORDER AFFIRMING ALJ'S DECISION DENYING SOCIAL SECURITY BENEFITS**

---

Plaintiff Dorene Leanne Babb claims she is disabled because she has depression, a herniated disc, bulging muscles in back, and pains in her left leg. An Administrative Law Judge disagreed, finding that Plaintiff's testimony was not credible and that the testimony of numerous medical professionals supported a finding that Plaintiff's impairments were not as severe as she claimed. Plaintiff challenges this determination on four grounds, but they are all unavailing. This Court affirms the judgment of the ALJ.

**I.  BACKGROUND**

Plaintiff, a forty-year-old full-time college student, filed applications for disability benefits, alleging she became unable to work as of December 2010 due to a herniated disc, bulging back muscles, and left leg pains. (AR 14, 152-61, 169-70) She further alleged that these physical limitations were exacerbated by depression. (AR 54-55, 58.)

Plaintiff indisputably suffers from these physical and mental ailments: the principal question here is whether they are severe enough to be disabling.

In November 2011, the ALJ conducted a hearing into Plaintiff's allegations. At the hearing, Plaintiff provided contradictory testimony about the severity of her pain. For example, Plaintiff testified that her back pain was a 10 on a scale of one to 10 on an "okay" day, and 12 or 13 on a bad day. (AR 61) At the same time, she also testified that "some days are better than other days and I don't have any pain at all." (AR 49)

Beyond being internally inconsistent, Plaintiff's allegations of constantly enduring the severest pain are not supported by the record evidence. For example, Dr. Douglas Hess, one of Plaintiff's treating physicians, initially suggested in December 2010 that Plaintiff's physical ailments did not preclude her from all work and that with treatment she could return to her job as a cashier at Walgreens, as long as she engaged in limited amounts of lifting to prevent the return of any pain and inflammation. (AR 247-49.) One month later, in January 2011, Dr. Hess changed his position somewhat, suggesting in a number of check-the-box forms that Plaintiff should not sit or stand in one position for more than thirty minutes at a time, could not lift more than ten pounds, and might be considered for some form of disability. (AR 250, 322-23, 341.)

Dr. Hess provided further reports throughout the first half of 2011, noting generally that Plaintiff had less pain but that it increased when she was required to stand in one place for an extended period of time. He ultimately concluded that Plaintiff could not be in a job that did not require her to maintain one position for more than half an hour at a time. (AR 316-18.)

At the same time, Dr. Hess never suggested, as Plaintiff did at the hearing, that she was enduring extreme pain on "okay" days and off-the-charts pain on bad ones. Rather, Dr. Hess's largely consistent position was that Plaintiff's pain could be managed if she performed work that did not require her to do a lot of lifting or to stay in one position (sitting or standing) for an entire work day.

Dr. Hess's assessment of Plaintiff's condition is largely supported by Anthony LoGalbo, M.D., a state-agency physician, who also concluded—based on his review of Dr. Hess's reports—that Plaintiff had the physical ability to perform a range of light exertional work with limited amounts of lifting. To be sure, Dr. LoGalbo suggested that Plaintiff could perform heavier and more frequent lifting tasks and more prolonged periods in one position, but both doctors concurred in her limited ability to perform these and other tasks. (AR 85-86, 95-96.)

Plaintiff provided similarly contradictory—and unsupported—testimony about the severity of her depression. On the one hand, when prompted by her lawyer, she emphasized she had thoughts of harming herself once or twice a week as a result of depression. (AR 64.) On the other hand, she said she was not going to any counseling for her depression because she was "doing okay right now." (AR 57.) This appraisal of the diminished severity of her depression was further supported by two other medical professionals: George Scudella, M.S.W., who treated Plaintiff and reported that her depression had responded well to treatment, was in remission, and would not limit her ability to work (AR 308, 310-13); and state agency psychologist Gayle Frommelt, Ph.D., who reviewed the record as a whole and found that there was no indication of or

3

evidence to support a finding that Plaintiff had any limitations due to psychological conditions.  (AR 84, 94.)

As relevant here, the ALJ, considering this record evidence, ultimately determined that: (1) Plaintiff suffered from disc herniation, back pain, and sciatica; (2) she nevertheless had residual functional capacity to perform light work, except that she needed the ability to sit or stand during the work day; (3) her depression was non-severe; (4) her statements about the intensity and limiting effects of her pain were not credible; and (5) she could work as a cashier, salesclerk, or fast food worker and such jobs were accessible to her in sufficient numbers in the national economy, though their availability would be eroded by fifty percent because of her requirement that she be able to sit or stand at will during the work day.  (AR 14-29.)

Plaintiff now raises four challenges to the reasoning that undergirds some of these conclusions reached by the ALJ.

## II.  **STANDARD OF REVIEW**

This Court's review of the ALJ's determination is limited to determining whether the ALJ's decision is supported by substantial evidence and whether the Commissioner—through the ALJ—applied the correct legal standards.  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  It requires more than a scintilla, but less than a preponderance.  *Wall*, 561 F.3d at 1084.  In reviewing the record and the arguments of counsel, the Court does not reexamine the issues de novo, *Sisco v.*

*United States Department of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993), nor does it re-weigh the evidence or substitute its judgment for that of the Commissioner, *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).  Thus, even when some evidence may have supported contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it de novo." *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

This Court applies this standard to each of the four challenges raised by Plaintiff in this appeal.

### III.  ANALYSIS

#### A.   ALJ'S DUTY TO DEVELOP THE RECORD

Plaintiff first argues that the ALJ insufficiently developed the record in determining Plaintiff's disability and improperly denied Plaintiff's request for a consultative examination to further determine whether Plaintiff had a disabling mental or physical impairment.  (Doc. # 23 at 11.)

The ALJ has a basic obligation to ensure that an adequate record is developed at the disability hearing consistent with the material issues presented by the claim. *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997).  In other words, the ALJ has a duty "to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts."  *Heckler v. Campbell,* 461 U.S. 458, 471 n.1 (1983) (Brennan, J., concurring).  At the same time, "[t]he burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish

medical and other evidence of the existence of the disability." *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004). Similarly, under 20 C.F.R. § 404.1512(c), Plaintiff has the responsibility of providing medical evidence to establish her impairments, their severity, and any resulting functional limitations. Finally, the ALJ can further develop the record by exercising her discretion to order a consultative examination. She generally does so "to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the ALJ] to make a determination or decision on [a] claim." 20 C.F.R. § 404.1519a(b).

Plaintiff takes issue with what she sees as two contradictory positions taken by the ALJ related to the ALJ's decision not to order a consultative examination. On the one hand, the ALJ decided not to use her discretion to order a subsequent consultative examination because the record as presented was sufficient for the ALJ to make a determination about Plaintiff's disability. (AR 38.) On the other hand, the ALJ found there was scant evidence to substantiate the severity of Plaintiff's symptoms in the medical records provided. (AR 24.) Plaintiff suggests these two positions are contradictory: in her view, the ALJ cannot state both that the medical evidence as provided precludes ordering a consultative examination and that the medical record evidence is insufficient to support a finding of disability.

The ALJ's two findings are not contradictory. A lack medical evidence presented by a disability claimant can serve as the basis both for the ALJ to deny a request for further inquiry and to deny a request for disability on the merits: Plaintiff bears part of the burden in presenting sufficient evidence of disability and cannot use a consultative

examination by itself to make up for her failure to present much of any evidence in support of her position. *Accord Branum*, 385 F.3d at 1271.

Further, there was neither "an inconsistency in the evidence" nor any indication that the "evidence as a whole" was insufficient to allow the ALJ to make a determination on Plaintiff's claim such that it would have been appropriate for the ALJ to exercise her discretion and order a consultative examination under 20 C.F.R. § 404.1519a(b). Quite the contrary: the evidence as a whole—including from Plaintiff's preferred medical source, Dr. Hess—established exactly what the ALJ found—namely, that Plaintiff suffered from physical and mental impairments but that she embellished the extent to which these impairments were disabling.

### B.     DISCOUNTING THE OPINION OF THE TREATING PHYSICIAN

Plaintiff's second argument is that the ALJ erred in the manner she considered and partially discredited reports prepared by Dr. Hess, whose opinion as a treating physician is generally given greater weight.

In accord with the Tenth Circuit's decision in *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003), if the ALJ seeks to discount the opinion of a treating physician, she should do so by following a two-step process. At *Watkins* step one, the ALJ determines whether the opinion is entitled to "controlling weight" by assessing whether it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at 1300 (quoting SSR 96–2p, 1996 WL 374188, at *2). If the ALJ determines that the opinion is not entitled to "controlling weight," she must proceed to the second *Watkins* step, in which she must consider a number of factors outlined in

20 C.F.R. § 404.1527 and 416.927, and then provide sufficient reasoning for the weight, if any, she assigns the opinion.  The factors to be considered at *Watkins* step two include the following:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1301; *see also Drapeau v. Massanari,* 255 F.3d 1211 (10th Cir.2001) (enunciating the same standard).

While *Watkins* prescribes this two-step process, the ALJ is not required to "apply expressly" all of the *Watkins* factors in deciding what weight to give a treating source's opinion.  *Oldham*, 509 F.3d at 1258-59 (citing *Watkins*, 350 F.3d at 1300; 20 C.F.R. § 404.1527)).  Further, if the ALJ rejects the opinion of a treating source, the ALJ's decision should be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Watkins*, 350 F.3d at 1300; *see also* 20 C.F.R. § 404.1527 (noting that if the ALJ rejects a treating source opinion, he must give "specific, legitimate reasons" for doing so).

Notwithstanding Plaintiff's arguments to the contrary, when the ALJ partially discredited Dr. Hess's opinion, she followed this two-step process from *Watkins*.  As an initial matter, the ALJ largely credited Dr. Hess's position, gave it "significant weight"

and specifically integrated Dr. Hess's recommendation about a sit/stand option into the residual functional capacity assessment. (AR 25)

Further, to the extent that the ALJ thought Dr. Hess's opinion could be interpreted as precluding a wider array of work, the ALJ justified this position by noting that many of Dr. Hess's later assessments were based not on repeated physical examinations but on self-reporting by Plaintiff at sessions in which the doctor only filled out paperwork. These are valid reasons for discounting the opinion of a treating source, as they take into account whether Dr. Hess's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," along with the nature of the "treatment relationship and the frequency of examination" and the type of "treatment provided and the kind of examination or testing performed." *Watkins*, 350 F.3d at 1300-01. That the ALJ did not specifically link the reasoning in her order to specific factors enunciated in *Watkins* does nothing to diminish the correctness of her position.[1]

## C.   SEVERITY OF PLAINTIFF'S MENTAL IMPAIRMENTS

Plaintiff's third argument is that the ALJ violated the Tenth Circuit's rule in *Hargis v. Sullivan*, 945 F.2d 1482, 1486 (10th Cir. 1991), which dictates that once a mental

---

[1] Plaintiff makes two related arguments about the manner in which the ALJ addressed Dr. Hess's opinion. First, Plaintiff suggests that the ALJ failed to note that, in January 2011, Dr. Hess suggested that he was "looking at short term/long term disability" for Plaintiff (AR 250), a statement Plaintiff interprets to mean that Dr. Hess thought Plaintiff could under no conditions work. This interpretation of Dr. Hess's offhanded comment is unavailing. Dr. Hess's consistent position was only that Plaintiff needed a job that did not require her to stand continuously, not that she could not work at all. *See, e.g.*, (AR 316-18). Plaintiff also makes a borderline frivolous argument that there is insufficient record evidence—such as a curriculum vitae—to support the notion that Dr. Frommelt is qualified to render such an opinion on Plaintiff's mental health. Plaintiff cites no legal authority requiring the provision of such credentials for someone held out by the state as so qualified. Regardless, Dr. Frommelt's position is echoed by Plaintiff's own treating source, Mr. Scudella, whose opinion on this matter was given great weight, and who similarly found Plaintiff's depression to be less than disabling. (AR 308, 310-13)

impairment is considered severe, it must be included in the RFC assessment.  Plaintiff argues that "severe" in this context means any slight impairment that interferes to some extent with a claimant's ability to work, and Plaintiff's depression surpasses this low bar. *See, e.g.*, *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997) (describing the standard for finding severity as a "de minimis" test).  Plaintiff therefore concludes that the ALJ erred in finding that Plaintiff's depression was non-severe.

Plaintiff's argument succeeds only in the parallel universe in which the record evidence provided by her own counselor, Mr. Scudella, does not exist.  As was discussed above (but ignored by Plaintiff throughout her briefing), Mr. Scudella, who actually treated Plaintiff for her mental health problems, indicated Plaintiff's depression was in remission and opined that she had no limitations in mental abilities.  (AR 308-13).  Further, Plaintiff herself conceded as much at her hearing, stating that she was "doing okay right now" as far as her mental health was concerned.  (AR 57).

This record evidence establishes that the ALJ did not err in determining that Plaintiff's depression was non-severe.  The evidence presented does not even surpass the low bar for establishing a severe mental health impairment.

### D.     PLAINTIFF'S ABILITY TO PERFORM PAST WORK

Finally, Plaintiff raises a number of related arguments regarding the ALJ's finding that Plaintiff was able to perform past work.  All of these arguments fail.

First, Plaintiff suggests that the ALJ made insufficient findings about Plaintiff's past relevant work. But this claim ignores relevant portions of the record where the ALJ did make such findings.  *See* (AR 28; AR 67 (citing AR 223)). Further, the ALJ

accurately noted that, under the *Dictionary of Occupational Titles* (*DOT*), Plaintiff's sales clerk job was semi-skilled, light work, and Plaintiff's cashier and fast food worker jobs were unskilled, light work (AR 28).  Finally, "[i]t is well established that 'the agency accepts the [definitions in the Dictionary of Occupational Titles] as reliable evidence at step four of the functional demands and job duties of a claimant's past job as it is usually performed in the national economy.'"  *Bowman v. Astrue*, 511 F.3d 1270, 1273 n.1 (10th Cir. 2008).

Second, Plaintiff argues that the ALJ erred in relying on the Vocational Expert's (VE's) testimony because it conflicted with the *DOT* and/or its companion publication, the *Selected Characteristics of Occupations* (*SCO*).  This argument also fails.  Plaintiff is correct that if there is an apparent unresolved conflict between VE evidence and the *DOT*, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE evidence.  SSR 00-4p, 2000 WL 1898704, at *2.  However, there was not a conflict in this case—just silence on the sit/stand question in the DOT.

Further, the *DOT's* silence as to a sit/stand option does not itself create an apparent conflict.  See *Zblewski v. Astrue*, 302 F. App'x 488, 494-95 (7th Cir. 2008) (unpublished) ("Because the *DOT* does not address the subject of sit/stand options, it is not apparent that the [vocational consultant's] testimony conflicts with the *DOT*."). As the Tenth Circuit has noted, "all kinds of implicit conflicts are possible and the categorical requirements listed in the *DOT* do not and cannot satisfactorily answer every such situation."  *Segovia v. Astrue*, 226 F. App'x 801, 804 (10th Cir. 2007) (unpublished) (quoting *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000)).

Finally, regardless of what import can be drawn from the DOT's silence on this matter, the ALJ elicited a reasonable explanation for any potential conflict between the *DOT* and the VE testimony in regards to the sit/stand option by asking whether the VE based her opinion about the availability of sit/stand jobs on her observation and years of experience in the field. *See* (AR 71).[2]

Third, Plaintiff argues that the ALJ erred because she did not make the specific findings regarding the sit/stand option as required under SSR 96-9. Plaintiff's argument again fails. SSR 96-9p articulates the agency's policies regarding the impact of an RFC assessment "for less than a full range of sedentary work." 1996 WL 374185, at *1. "An RFC for less than a full range of sedentary work reflects very serious limitations . . . and is expected to be relatively rare." *Id.* Thus, SSR 96-9p provides guidance in determining the extent that the sedentary occupational base is eroded based on various additional limitations or restrictions. *See id.* at *1-9. Here, Plaintiff was not limited to less than the full range of sedentary work and the guidelines of SSR 96-9p were not applicable.

## IV.  **CONCLUSION**

This Court finds that the ALJ's decision was supported by substantial evidence and the ALJ committed no legal error in reaching her adverse finding as to Plaintiff's disabilities.

---

[2] Plaintiff also notes that the ALJ's actual question to the VE was inaudible as reported in the transcript of the hearing and that this alone means that remand is necessary to determine what the ALJ precisely asked the VE. But, as the Government notes (Doc. # 26 at 19), the ALJ herself reiterated the question she asked at the hearing in her ruling, and it is safe to assume that she accurately remembered the question she asked the VE.

Accordingly, it is ORDERED that the ALJ's denial of disability benefits is AFFIRMED. It is FURTHER ORDERED that each party shall pay its own costs and attorney fees.

DATED: August 22, 2014

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge